Argument is Barnes v. Security Life. Thank you, your honors. And good morning. May it please the court. Pauli Flepsen for intervener appellant Jackson National Life Insurance Company. I have with me today, also admitted to this court and on the briefs in this case, my partner, Ms. Shonda Patterson-Strahn. This appeal arises from a denial of intervention to the proposed intervener, Jackson National. Either as of right or permissively. To paraphrase the district court's order in this case, the crux of this issue on appeal is whether Jackson's interests were adequately represented by the parties. The district court said yes because it found Jackson's and Security Life of Denver's interests were identical, which triggered the court's application of a presumption of adequate representation that it believed was not convincingly rebutted. This court has stated many times that a proposed intervener such as Jackson has a burden in such a determination, which is minimal, and it is enough for Jackson to show that the representation may be inadequate and the possibility of divergence need not be great. But that's something that can be re-examined from time to time. And at this point, maybe there'll come a point in the litigation when Jackson is not being adequately represented by counsel for the other defendant. For the defendant. But at this point, there's nothing that's apparent that I can see where they won't adequately represent your interests. If that changes, there's no problem with, again, moving for intervention, and the court may well grant it at that time, since the only reason for not granting it, or the principal reason, was the representation issue. Well, I think, Your Honor, that in light of the facts in this case, and the circumstances in this case, that it would be a mistake to let the case leave the station, if it were. It's stayed currently. The district judge recognized in the motion to stay, filed by SLD, that if the case were to go forward without Jackson, and then Jackson were to be allowed to intervene, it would cause needless complications and intractable problems for the litigation, because Jackson would have been excluded from representation in this case. The longer that Jackson's off the train, the further from the station the train goes, and there's more precedent in decisions, and rulings, and discovery, and concessions have been obtained in the record. Without their presence. Just give us a bullet point of the ways in which Jackson argues that security life may be inadequate to represent them. The arguments just bullet them for us. Certainly. And it's important that the adequacy of control determination was based upon the determination that the interests were identical. And here they are not. And so if the interests are not identical, then that presumption falls out. That is correct, your honor. And at that point, the presumption is that you can intervene. Exactly. The possibility of a divergence. Tell us why at this moment, and this isn't something that's going to evolve or change, because the interests may be expressed later, but right now, in the evidence, what are the differences of interests? Well, the first and primary reason, which actually the judge found to be buttressing or bolstering his conclusion, is Jackson's right to control the defense. And what this record shows, and what... But that is not, that didn't resonate with me, because even if they intervene, they won't have the right to control the defense. So if it's hinging on a right to control, intervention doesn't solve that problem. They will have the right to control the defense as to the name plaintiff's claims and the claims of all class members. If they only come in as an intervener, they don't necessarily have that right. They're simply an intervener, an additional lawyer, an additional party arguing their own particular interests. But SLD has conceded that with respect to the Jackson administered policies, it has absolutely no interest in defending or in seeing that Jackson's liability is defended with respect to any damages that it may occur with respect to Jackson's in administering those policies. And the key argument against, or that's brought by the plaintiffs here, as I understand it, is that the policies were improperly administered. So it's really in the wheelhouse of Jackson, is it not, what is in dispute here? Well... The parties are challenging how the policies are being administered. That's correct. And there are two different blocks of policies that are subsumed within the class definition. And one block of policies is administered by Jackson National. The other block of policies is administered by Security Life of Denver. The Jackson policies, excuse me, were never administered by Security Life of Denver. In fact, Barnes was partly administered by partly by Security Life, wasn't it? And the next point, the next words out of my mouth were to say that Security Life of Denver has never administered the policies that Jackson National administers. Rather, there was a predecessor in interest, Southland, which issued those policies. And Southland transferred the interest in those policies in 2002 to Life of Georgia through an indemnity reinsurance transaction. And by that transfer, Life of Georgia became the administrator of those policies and made all the decisions that are at issue in this litigation. Now in 2005, Jackson National purchased Life of Georgia, thereby becoming the successor in interest to Life of Georgia's interest. It wasn't until 2004 by which time Southland was no longer administering the Barnes policy that the Southland policies, other than the ones that were administered by Jackson, were then acquired by Security Life of Denver. Let me, I understand that chronology, let me just approach this a little bit differently and maybe more successfully. I've struggled about what the differences of interests are today. And those could include potential problems rather than problems that have actually actuated already. One might be that Security Life and Jackson might be administering the same phrase in different ways. This cost of insurance. Correct. And it occurred to me that it could be that Security Life will want to defend its way of administering that phrase. And if it controls the litigation, that might be inconsistent with the way Barnes would, I mean, the way that Jackson would be arguing. Do you see that as a present inconsistency in interests or not? It is absolutely a present potential divergence of interest. Potential divergence, all right. Then the second potential difference I see is that Security Life may want to preserve an indemnity claim against Jackson for unfaithful administration and that it might have an interest in arguing that Jackson was improper in the way it administered that. Is there any, and that one I'm less clear about, so I'm asking really for clarification, is there any way that security could sue Jackson for improper administration of this phrase cost of insurance? Well, I think in connection with an ultimate indemnity claim, when Jackson seeks to defend on the basis of a conflict of interest, which is something that district court said was a remedy Jackson might have, that certainly could be something that Security Life of Denver could raise. So there is that potential conflict between the two insurance companies which might influence the way that Security Life would argue the meaning of this phrase or not. I'm just trying to... Yes, Your Honor. I'm just trying to... Okay, well, you go ahead. And we... Did you... How did you argue that point to the district court? As I understand, there's nothing in the record to show any disagreement between the two insurance companies regarding what costs should be expended, what costs are appropriate to take out of the cash value of the insurance policies. If you had said we disagree on how that should be done, we disagree on the interpretation of policy, then you win. But you didn't make any type of showing of that possibility in district court, did you? Well, Your Honor, we did not because this was... It merits determination that would await discovery and a trial. Now, we were not in possession of information with respect to how Security Life of Denver administered its policies, just as Security Life of Denver wasn't in possession of our... of our information. But did you make that allegation of that possible conflict of interest, or at least divergence of interest? Yes. You didn't prove it because you weren't an intervener. You couldn't have been discovered. But did you allege that possible divergence of interest? Your Honor, we did, and it unfolded in real time. What we had was an... Where did you allege it? Where did you say that particular divergence of interest might be around, might exist? Well, we said in our initial motion, once there was an extraordinary... this was extraordinary that Security Life of Denver rejected Jackson's right to control the defense of this litigation because it was the very setting of those charges that are at issue in this litigation which gave Jackson its interest. And this... these policies, this... this transaction creates a business arrangement that is going to last until the last policyholder of the thousands pass away. And in the agreement... is it not Jackson's responsibility to set the costs and charges that are at issue here? That is correct, Your Honor. And did the district court misread that agreement? Well, I don't think the court ultimately got to that point. It just found that Jackson's... First of all, it said Jackson's right to control is very important. And what I'm saying today is that the right to control cannot be seen as buttressing that determination when Jackson was deprived of that right. There's no dispute as to that. Security Life of Denver admitted that below and it has admitted that in its amicus brief before this court. Secondly, the court found that in fact that Jackson could have indeed filed an action for breach of contract or defended an indemnification claim was adequate, was an adequate substitute for Jackson defending the imposition of the underlying liability in the first place which it was deprived of participating in by the refusal of the right to control. And at the end of the day, if the plaintiffs in this case prevail, the judgment would be against Jackson? No, it would be against Security Life of Denver. But Security Life of Denver has made an indemnification demand. Jackson has accepted that with respect to the name plaintiff's claims. It remains to be seen. So there is liability of Jackson then ultimately to be determined here? Yes, ultimate liability and its interest is financial and it would suffer the diminution of those charges for the next several decades. But that's with respect to not all the members of the class. Just the members of the class whose policies are administered by Jackson. Barnes' policy is administered by Jackson, but the putative class includes people whose policies are not administered by Jackson. Is that correct? That is correct. Now, I'm still confused about something. If the presiding judge will indulge me, I'd like to try to understand this. The way the policies were administered by the two insurance companies may differ. We'll discover, we'll learn that through discovery. If they don't differ, their interests are the same. If they do differ, then it's probably because they interpret the policies differently, which is simply a legal issue. And I don't see the big problem with later in the litigation, if it turns out that there's a difference in the way the policies are administered, in having legal arguments made by Jackson explaining why its interpretation is correct. And that may even be done, well, they can intervene at that point. You seem to suggest that if they don't intervene now, there'll be too much water under the bridge. But it looks like just a legal argument. Tell me what I'm missing. Your Honor, and if I may, since my time is up, I believe. And this relates to a point that Judge Ebell made about the potential that in fact the parties could prove different facts or take different positions with respect to the facts involving the liability which is sought here. And it's not just a legal issue. First of all, as to the interpretation issue, this lawsuit is one of more than a dozen similar lawsuits around the country raising the same issues. And courts have come to multiple conflicting interpretations. So there's no reason why that you would assume that the parties would come to the same interpretation. But more importantly, and plaintiff has recognized, what Jackson should have done on this motion to intervene was come in at that stage and prove that it didn't do what SLD was doing. So there has to be evidence of the liability. Not just a question of contract interpretation, but then you have to look at what the parties are actually doing with respect to administering the non-guaranteed elements at issue in this case. And we don't know that yet, but we're confident that because we've been deprived of the right to defend ourselves in this action, that the potential for a divergence of interest caused by the rejection of, it was an astounding rejection, of the right to control will deprive us of the opportunity to be on that train when it leaves the station to be there for all the discovery and the determinations that are going to be critical to that ultimate final liability determination. And it will not be able to unscramble the egg if it is allowed to intervene a year from now or at a much later date. Thank you. Thank you. Could you add two minutes thirty to his argument? Good morning. Good morning. I may please the court. My name is Toji Calabro. I represent Plaintiff Barnes. Could you bring the mic closer to you? Sure. I represent Plaintiff Barnes, the Appellee. Now, I'd just like to clarify at the outset the factual and procedural context in which Jackson's motion to intervene arises. This is a straightforward breach of contract action. All of the putative class policies at issue in this case were issued by what is now Security Life of Denver. All of them are policies that contain materially the same relevant language. Thus, Security Life of Denver has the exact same obligations under all of the policies. The policies that Jackson eventually started administering and the policies that Jackson never started administering. Are there policies that Jackson is still administering? Jackson, yes, there are policies that Jackson is administering, but Jackson is not a party to any of these contracts. Jackson is a party to a contract. But their work as the administrator has been questioned. Well, Your Honor, no. Security Life of Denver, as the contracting party, is the one who's the claims against. Security Life of Denver, 20 years after these policies started being administered, delegated to Jackson certain responsibilities, but as we know from basic... Administrative Services Agreement. Under the Administrative Services Agreement, as part of a completely separate reinsurance transaction. The subject matter of this litigation is the insurance contract between the insureds and the insurer. The reinsurance transaction that Jackson is a part of is a completely different transaction. Plaintiff Barnes is not a party to those transaction documents and does not assert any claims arising out of those transaction documents. I thought Barnes was saying that he was charged too much. And the determination of what will be charged, isn't that in Jackson's bailiwick? It is subject to Security Life of Denver's oversight. Not only because... Well, answer my question. It is... Well, that is the means to be determined, Your Honor, frankly. Well, then shouldn't Jackson be at the table to help the determination? No, because we never entered into a contract with Jackson. Our contract counterparty is Security Life of Denver, so we can hold Security Life of Denver responsible for what happens under that contract. We never entered into a contract with Jackson. But if you had just sued Barnes... I mean, if only Barnes was the... Barnes was the only plaintiff. There was no putative class action. And Barnes sued Security Life. Jackson would have an absolute right to take over the defense. We would disagree with that, Your Honor. We would think under basic contract law, when I enter into a contract with somebody... You're not changing the parties. We're saying they have a right to take over the defense. Oh, if they have the right to take over the defense under the contract that they have with Security Life. Yes, Your Honor. I'm sorry. I apologize. That's correct. Because of their indemnity. But they have the right to take over the defense in Security Life of Denver's name, not their own name. And what's at issue here is whether Jackson has the right to intervene in this case in Jackson's name to assert the exact same defenses to the contract that Security Life is going to enter. Now, Security Life, did they not oppose the intervention? What was their position on the intervention? Your Honor, I don't remember exactly, but I believe they just didn't file a brief. They did not oppose it. They didn't grant... They just never went on record on their position. I don't remember for a fact, but I think it's right. But they did refuse to allow Jackson to take over the defense of all the cases. They did because Jackson doesn't administer all of the issues. Let me ask you this. The best argument I can see for intervention is the fact that you're opposing it. Because if it's as simple as I think it is, and it's mainly legal arguments, I can't see what the burden on you is of having to argue, respond to a couple different legal arguments. What's your problem with their intervening? Sure, Your Honor. If Jackson is allowed to intervene without limitations, we are facing a situation in which it's a two against one, right? As a party to the case, Jackson presumably would be able to propound its own discovery, question all the deposition witnesses, presumably its own opening at trial, and examine the witnesses in doing its own closings. Those are all hypothetical that a district judge as a monitor of the proceeding before that judge can control. And if you feel it's multiplicitous, or duplicative, or any of those other words that create problems for lawyers, you can ask for relief then. Well, Your Honor, it will certainly increase costs and complexity for us no matter what. Maybe or maybe not. It just depends on how tightly the judge runs the ship. Well, I think, Your Honor, that this appeal, for example, is manifest. That it's increasing complexity and delaying. We've been on stage for a year. If it's increased difficulty and cost, who was it that brought this case, this appeal? Who was it that was- Jackson made the appeal. Yeah, but because if you had just simply allowed the intervention, we wouldn't have had this appeal. So it was your opposition to it that caused it. So I don't know that you can say, oh, gosh, we're innocent victims here, because it was your resistance. I mean, because apparently, Security Life wasn't opposing it. Well, Your Honor, Security wouldn't oppose it because it's just another way to gang up, basically, on the plaintiffs in this case. So your only objection is you don't want to have to fight two opponents rather than one opponent. That is part of it. It's also going to increase complexity and cost. And I think the court should also look at the rules. It just doesn't- it's not a very compelling argument to me for the reason I said before, that the district court can prevent duplicative arguments and can streamline any way that the court desires. Is there any discovery- may I add a quote or footnote? Is there any type of discovery that you fear would be conducted if Jackson's allowed to intervene that otherwise wouldn't be conducted? Because if so, that to me says Jackson should be allowed to intervene. Well, it's hard to say in the abstract. I think you're right, Judge Hartz, that this is a case in which if there does become an issue later in the case where Jackson's presence is important, then at that time they can move to intervene. But to your point, Judge Ebel, the district court has decided that they are duplicative. And that's why he denied the motion to intervene. And frankly, if Jackson is allowed to intervene in this case, think about other cases. Right? I mean, it is not uncommon for companies to have a tower of insurance where there are 10 different insurance companies. Well, I don't think we're going to decide this case based on how some other court in some other case might rule. Well, I think as an appellate court, we think about what the implications of the rules are. And if we're asserting that an insurer, an indemnitor, has the right to intervene in its own name, what is it to stop a whole tower of insurers, 10 different insurers, intervening in their own name? What's to stop, if you're worried that they're doing the administration, what's to stop employees at Security Life at Denver or employees at Jackson? Before we get too far afield, when we look at Rule 24, could you tick through those requirements and see why Jackson has not met them? Sure. So first we start with whether they have a sufficient interest in the subject matter of the litigation. And they don't have any interest in the subject matter of the litigation because they are not a party to the contract. They're a party to a separate contract. But again, their actions in determining costs and administering the policies is at issue. But they were performing those services on behalf of Security Life at Denver. And that's what I was getting to with the employees. Employees of a contracting party are the ones who are actually doing it. But we don't think that the employees have the right to intervene in their own names into a contract dispute. I mean, the basics of contract law is that parties are bound to do something because they can see. Is Jackson presently administering Barnes's policy? Jackson is presently administering, as we understand it. We haven't taken discovery on it. But Jackson represents that they are currently administering Mr. Barnes's policy. Wouldn't it be fun to have Jackson at the table when you have that deposition? Well, it's our position, Your Honor. Since they're sort of in the middle of that tripartite issue. Of course we're going to need to take discovery from Jackson. But what's at issue here is that Security Life at Denver has already conceded that the documents in Jackson's possession are under Security Life at Denver's control. And that's clear from the reinsurance transaction documents. So they already have to produce them in this litigation. Is there any reason you are opposing this intervention other than that you don't want to have to have two people at the other sitting on the council table opposing you rather than one? Well, I mean, that's it. It just creates complexity. That's the only reason you advance? I think that's the only. So there's no loss of privilege or any kind of a legal argument that you're legally would be impaired by that joinder. It is hard to tell that right now, Your Honor, of course. But, you know, certainly it will create. But it's not being asserted at this point. I'm sorry? You're not asserting, articulating a particular legal prejudice at this point. That's right. So under Rule 24, the thing that we're to look at in those four requirements is whether or not there is inadequate representation. Is that the thing that we rely on here? Because that seems to be a focus by the district court, whether or not Jackson's interests were adequately represented. That was certainly the focus of the district court. We would also note that there are other requirements that the circuit has required, including that the present case has to impair a sufficient interest. Potential impairment. Right. And in this case, there's no way for Jackson's interest to be impaired without Jackson's consent. Because under the transaction documents, security life at Denver is not permitted to settle this case without Jackson's written authorization. So that would address the settlement issue. But the word is may impair. And I mean, that's the speculative. That contemplates the uncertainty of whether there would be concessions at litigation or litigation strategies. I mean, unless we cannot conceive of any realistic possibility of impairment, we have to say that there may be an impairment. And the way you answer that is, are their interests identical or not? So it all really boils down to whether their interests are identical. Well, Your Honor, I think it's both parts. It's literally not capable of being impaired without their consent. Security life at Denver just does not have the authorization to do that. That's one thing. Impairing interest. I mean, when you say it's going to be OK, calm down. You can come in at the end when we're getting ready to settle the case. Isn't that a little too late in the world of litigation? It's not. It's not about the motion to intervene. It's not that they have the right to intervene at settlement. But security life at Denver cannot agree to settlement without. I'm saying by the time you get down to that type of negotiation as regards settlement, many things have been determined. Many things have been decided. Positions have been taken and interpretations made. Right. And that happens all before you get to the settlement point. And if the only opportunity Jackson has is to come in and say, I do not or do like the settlement that's now on the table, isn't that late in the day? Well, Your Honor, the other prong that we were talking about with the presumption of adequate representation takes care of it. Remember, all of these policies are security life at Denver policies. Security life at Denver is on the hook for all of them. And while Jackson likes to say that there's a separate block, security life at Denver can't make any concessions with regarding this Jackson administered block without it necessarily affecting its own block. Remember, all of it. If Jackson's administering a separate block on its own, then couldn't these concessions by security affect an interpretation of the very same words in the other agreement? Your Honor, it will affect security life at Denver's obligations under the policies. Jackson came in, its contractual obligations under the services agreement is to follow the terms of the policies under security life at Denver's oversight. So it doesn't have an interest in what the security life at Denver policies are. What it bargained for was to follow security life at Denver's policies and the security life at Denver policy terms. That's what it bargained for. Remember, Your Honor, this is not an ovation transaction. In the VSETI article that they cite in the reply brief, they talk about the difference between assumption reinsurance where you actually affect innovation. And then they talk about indemnity reinsurance, which is what Jackson here did. And it's not going to be surprising that under an indemnity reinsurance transaction where you don't have to get the policyholder's consent, it's cheaper and it avoids a lot of regulatory heartache. What Jackson has done here is they've taken essentially the economy plan and want the rights and obligations that come with the gold plan. They did not bargain for a direct contractual relationship with our client. And in fact, if you look at the reinsurance... I'm sorry. I don't want to end up extending the time to ask about adequate representation. Did the district court, I believe opposing counsel said something about the district court said that not only would it not allow intervention now, but it would get too messy later on. It would be too hard to allow Jackson to intervene later on. And that kind of surprised me. But I was wondering if that's your understanding of what the district court said. I don't have a specific recollection. Because we defer to the district court on adequate representation. I assume that's a matter of abuse of discretion. And from what the district court saw at this point, it doesn't see any difference in their interest in the litigation. So there's no need to intervene. But things could happen. And it might appear that there are differences. And then the court could exercise its discretion and allow intervention. But I gathered from what opposing counsel said that the district court thought that would be very unlikely. That would be so unwieldy to bring in Jackson as intervener later on. Do you recall anything said by the district court about whether it could reconsider the issue? I don't recall that. But certainly, this court's jurisprudence is clear that it can reconsider the issue. And I would also just say that the district court was correct. I mean, the presumption is triggered. Because security life for Jackson is important. I'm not talking about presumption. They just didn't show any difference so far in their approaches to this case. Right. There was no concrete example that this court's jurisprudence requires for them to overcome the presumption. And the presumption applies because they both have an interest in defending the claim. Right? They both have an interest. We don't know how security life has been construing that phrase, cost of insurance, in the other policies. We don't know whether it has been construing that phrase the same or contrary to the way Jackson does. Right. We don't know what conversations security life and Jackson may have had about how that phrase should be construed. We don't know if security ever told Jackson, you interpret that narrowly against the insured. Or this is what we do in other policies. This is the way we want you to do it. That's right, Your Honor. All of those things are uncertain. And that's why, for intervention, the question isn't, is there a conflict? But may there be a conflict? Your Honor. Can there be one? Your Honor, respectfully, the decisions are that the presumption, once the presumption is triggered, which it is here, they have to show concrete reasons. The question is whether the presumption is triggered. And the presumption is only triggered if the interests are identical. And my point is, at this point in the record, I don't have any, without discovery of these private conversations and the way that each side, in fact, interpreted the clause, we can't possibly, I don't see how we could possibly say they may not be, may not be inconsistent. May I answer that quickly, Your Honor? Yes, please. Then that is another reason to affirm the district court, because it's their burden to make the showing. Because they haven't made the showing, their motion is denied. And that's for those reasons. They couldn't possibly make that showing with evidence because they haven't had discovery yet. All they can do is articulate a possibility. Well, Your Honor, if you don't mind if I answer that. Respectfully, they do know how they've, I've already administered the conflict. They don't know how the other side has done it. They don't know how, how security life has done it. Well, Your Honor, they've put forth, okay. I think we're exhausted. Thank you, counsel. The case is submitted and your time went over when you first argued. So we've heard from both of you at length. Thank you very much. The case is submitted.